**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **MICHAEL BURTON,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Civil Action No.  GJH-15-3472 |
| | * | |
| **DAY 1 SOLUTIONS, INC.,** | * | |
| | * | |
| **Defendant** | * | |

\*\*\*\*\*\*

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiff's Motion for Entry of Default Judgment ("Plaintiff's Motion")(ECF No. 8).  Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable George Jarrod Hazel referred this matter to me for the making of a Report and Recommendation concerning default judgment and/or damages.  For the reasons stated herein, I recommend the Court allow a supplementation of the record and enter judgment in favor of Plaintiff in the amount of $4,201,176.80, plus interest until paid.

**I.     Factual and Procedural Background**

Plaintiff is the "Trustee of the QB Trust also known as the QB S.O.M. Trust." Declaration of Michael Burton, at 1, ECF No. 8-1.[1]  On November 16, 2015, Plaintiff filed his Complaint asserting an entitlement to monetary damages as a result of monies due on Convertible Promissory Notes (the "Notes") (Counts 1 and II), as well as a breach of a Convertible Note Purchase Agreement (the "Purchase Agreement")(Count III).  See Complaint, ECF No. 1.  Service upon Defendant occurred on November 24, 2015.  ECF No. 5.  On January

---

[1] The Burton Declaration begins by stating that it is an "unsworn" declaration.  It is however, signed under the penalty of perjury and this member of the bench accepts it as a fully executed statement under oath.

7, 2016, the Clerk of the Court made an entry of default as a result of Defendant's failure to file an Answer.  ECF No. 7.

Plaintiff contends that the Promissory Notes and Purchase Agreement attached to the Complaint were signed by Defendant.  Burton Decl. at 1.  The Purchase Agreement is dated June 18, 2015 (Compl. Ex. 1).  The Notes are dated June 18, 2015 (the "June Note")(Compl. Ex. 2) and July 28, 2015 (the "July Note")(Compl. Ex. 3).  The Purchase Agreement and the July Note reflect a signature of O. Luis Benavides, on behalf of Defendant Day 1 Solutions, Inc.  Significantly, Plaintiff has not filed a signature page for the June Note.

By its terms, the Purchase Agreement, "and all actions arising out of or in connection with" it shall be governed by the laws of the State of Maryland.  Purchase Agreement at 6.  Additionally, each party "irrevocably consents to the exclusive jurisdiction of, and venue in, the federal courts of Maryland."  Id.

The Purchase Agreement indicates that the "proceeds of the sale and issuance of the Notes shall be used to fund the Company's working capital and general corporate requirements."  Each Note documents Defendant's promise to pay two million dollars ($2,000,000) to "NuViewIRA FBO QB S.O.M. Trust, Beneficiary, of the Robert W. Burton (Deceased) Roth-IRA, Act#1421666."  The Purchase Agreement also includes a "Permitted Transfer Agreement," (the "PTA") dated June 11, 2015, as Exhibit A.  The PTA allows any "Burton Entity" to freely transfer the Notes to other "Burton Entities," with notice to, but without approval of Defendant.  Both the QB Trust and the Robert W. Burton (Deceased)Roth-IRA are identified by the PTA as Burton Entities.  On September 8, 2015, the Notes were transferred to Plaintiff with notice to Defendant.

Plaintiff relies on the averments in the Complaint alleging that Defendant defaulted on the terms of the Notes. Compl. at 3. Plaintiff notes that Defendant represented it was not in violation or default and that none of the statements or information furnished in the Purchase Agreement "contains or will contain any untrue statement of material fact or omits or will omit the stated material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading." Compl. at 3; Purchase Agreement at ¶2(l).[2] The Complaint alleges that Defendant knew it was in default "as to its agreement with Corporate Office Properties Trust ("COPT")." Compl. at 4.

The Purchase Agreement states that in the event that the "initial Closing is effected, [Defendant] shall reimburse the reasonable, documented, Investor legal fees . . . not to exceed $40,000." Purchase Agreement ¶ 7(b). The Complaint indicates Defendant has failed to make payment. Compl. at 5. It also states that the amount due and owing for said legal fees is $35,320.50 plus interest at the rate of 6% from September 9, 2015. Compl. at 6. Plaintiff has submitted an invoice and time details from counsel in support of these sums. Burton Decl., Ex. 1.

The Complaint implies a host of other breaches without support. By way of example, the Purchase Agreement provides that the monies used to purchase the Notes would "be used to fund the company's working capital and general corporate requirements," and that "no funds may be used to pay dividends, distributions, or to issue loans to employees, officers, directors, or stockholders of the company . . .". Purchase Agreement at ¶1(c). The Complaint is silent as to how this promise was violated. The Complaint states Defendant made false statements "including the exaggeration of Defendant's revenues and the failure to truthfully account for and report expenses, assets, and liabilities incurred." Compl. at 4. It contends that Defendant made

---

[2] The Complaint erroneously indicates this language is found in ¶2(g).

3

false representations "that the Defendant's officers would not receive personal loans without written approval." Id. Additionally, the Complaint states that false representations were made that the proceeds of the Notes "would be used to fund [Defendant's] working capital and general corporate requirements and that no proceeds would be used to make distributions to employees, officers, directors and/or stockholders." Id. The Complaint merely makes mention of the contractual promises, without stating that said promises were in fact broken or setting forth any of the descriptive acts in support.[3]

The Notes define "Events of Default." Of particular interest is that a default occurs if Defendant remains "in breach of a material provision . . . of the Note or the [Purchase Agreement] after notice and a reasonable opportunity . . . to cure." Notes ¶ 15(b). The Notes provide that in the event of default, the holder of each Note may declare all outstanding payable obligations immediately due with appropriate notice, with interest to accrue at the rate of 8% per annum. Notes ¶16. Furthermore, if action is commenced to collect on the Notes, Defendant promises to pay all costs and expenses incurred, including reasonable attorney's fees. Notes ¶18. The Default Notice was sent on November 2, 2015, and Defendant has failed to cure the identified breaches within the ten day period to do so. Compl. at 5.

Plaintiff has also submitted the Declaration of Ronald S. Canter, Esquire, in support of his request for the payment of reasonable attorney's fees to prosecute this action. Declaration of Ronald S. Canter, Esq., ECF No. 8-2. Mr. Canter's declaration speaks to his experience at the bar, the experiences of his associate attorney Bradley T. Canter, their rates and services provided,

---

[3] Plaintiff attempts to backfill these deficiencies by reference in his declaration to Exhibit 4 of the Complaint, which is the Default Notice to Defendant of the particulars of Plaintiff's claims. Compl., Ex. 4. Once again, most of the concerns raised use conclusory language and is lacking in specificity. While likely sufficient to proceed with litigation, the conclusory language becomes problematic when the Court attempts to identify the "well-pled factual allegations" which can support a judgment of default.

indicating that said rates are "within the hourly rates set out as guidelines in Appendix B of the rules of this Court." Canter Decl. at 2. Said fees total $4,480.45. Canter Decl. at 3.

## II.  Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages, the Court may enter a default judgment against the defendant pursuant to Rule 55(b)(2). In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). However, "liability is not deemed established simply because of the default . . . and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability." *Id.* The Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but finds that default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the plaintiff establishes liability, the Court then turns to the determination of damages. *See Ryan*, 253 F.3d at 780–81. The Court must make an independent determination regarding damages and cannot accept as true factual allegations. *See Lawbaugh*, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so.  *See, e.g.*, *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment was entered against defendant because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought); *DirecTV, Inc. v. Yancey*, No. Civ. A. 404CV00011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that a hearing was "not required to enter default judgment" because plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits").  The Court may rely instead on affidavits or documentary evidence of record to determine the appropriate sum.  *See Monge*, 751 F. Supp. 2d at 794–95.

### III.     Discussion

Given that the Defendants have failed to plead or otherwise assert a defense, the Court deems all of Plaintiffs' factual allegations in the Complaint not pertaining to damages admitted.  Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780.  It is within the Court's discretion to grant default judgment when a defendant is unresponsive.  *See* Fed. R. Civ. P. 55(a)–(b); *see also*, *Park Co. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment when the defendant lost its summons and did not respond within the proper period); *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *see also*, *Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment was appropriate because defendant was

"unresponsive for more than a year" after denial of his motion to dismiss, even though he was properly served with plaintiff's motions for entry of default and default judgment).

For the reasons stated below, it is my recommendation that Plaintiff is entitled to default judgment. In determining damages, I rely on the affidavits and other evidence of record to determine the appropriate sum.

The record supports the conclusion that Plaintiff has followed all the protocols required by the written instruments, with one exception. Namely, Plaintiff has failed to submit the signature page of the June Note. I recommend that the Court allow Plaintiff to supplement his pleading with a supporting affidavit, and if the submission is satisfactory to award Plaintiff the entire amounts sought.

There does not appear to be any procedural irregularities leading to the Clerk's entry of default. The factual record supports the notion that Defendant violated the terms of the Notes in at least one material respect. Namely, that Defendant represented in the Purchase Agreement that there were no material untrue or misleading statements, yet the Complaint alleges that Defendant knew it was in default "as to its agreement with Corporate Office Properties Trust ("COPT")." Given the sizeable financial contributions that the Notes represent, it is beyond question that disclosure of an existing default at the time of execution of the instruments is material. Similarly, the failure to pay outstanding legal fees as expressly warranted in the Purchase Agreement is meaningful. As Plaintiff has demonstrated the issuance of the Default Notice and the failure of Defendant to make a timely cure, Plaintiff has satisfied the liability phase with well-pled facts.

I am of the view that a hearing is not required in order to determine the damages owed. The damages to which Plaintiff is entitled, are established by the instruments in the record. The

Notes are clear in that the base amount of each Note is two million ($2,000,000) dollars. Said Notes enjoy interest rates of 8% per annum, at a per diem rate of $444.44 from November 2, 2015.[4] Calculating the rate through April 30, 2016, the accrued interest totals $79,999.20. Accordingly, by the end of April 2016, Plaintiff will be entitled to $2,079,999.20 on each Note. The Purchase Agreement also entitles Plaintiff to reimbursement for unpaid legal fees associated with the transaction in the amount of $35,320.50 plus interest at the rate of 6% from September 9, 2015. The per diem rate is $5.88, and through April 30, 2016, the accrued interest will total $1,377.50. The total sum for these transactional legal fees will be $36,698.00. Lastly, Plaintiff incurred litigation fees associated with the filing of the present claim in the amount of $4,480.45. The hourly rates charged by M. Canter and his associate appear reasonable and are in fact consistent with the Local Rules of this Court. All totaled, as of April 30, 2016, Plaintiff is entitled to the sum of $4,201,176.80.

**IV.    Conclusion**

Based on the foregoing, it is my recommendation that the Court permit a supplementation of a missing signature page and grant Plaintiffs' Motion for judgment against Defendant Day1 Solutions, Inc. in the amount of $4,201,176.80, plus interest until satisfied.

April 27, 2016                                                                                /s/
                                                                                         Charles B. Day
                                                                                         United States Magistrate Judge

---

[4] It appears that Plaintiff inadvertently moved a decimal point in his calculations, as Plaintiff calculates the per diem rate at $44.44.